IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ROBERT HANDLER, not individually but as COURT APPOINTED RECEIVER FOR HYATT JOHNSON CAPITAL, LLC and JASON HYATT, | ) ) ) ) ) | |
| Plaintiff, | ) ) | Case No. 11 C 4494 |
| v. | ) ) | Hon. George W. Lindberg |
| NICK HEIDENRY, et al., | ) ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Before the Court are motions to dismiss filed by defendants Alicia Eliscu ("Eliscu") [35], the Edward H. Eliscu Marital Trust ("Eliscu Trust") [57], and JPMorgan Chase Bank, N.A. ("Chase"), as trustee of the Antonina B. Meyer Trust ("Meyer Trust") [97]. For the reasons set forth more fully below, the motions to dismiss are denied.

*I. Relevant Facts*

In May 2008, this Court appointed Robert P. Handler to act as Receiver ("Receiver") for Hyatt Johnson Capital, LLC ("HJ Capital") in *SEC v. Hyatt, et al.*, 08 C 2224. In July 2011, the Receiver initiated the instant action against fifteen named defendants alleging Illinois state law claims for unjust enrichment (Count I), constructive fraudulent transfer (Count II), and fraudulent conveyance (Count III). This Court has supplemental jurisdiction over this case pursuant to 28 U.S.C. § 1367. *See Scholes v. Lehmann*, 56 F.3d 750, 753 (7th Cir. 1995).

According to the complaint, the Receiver is suing these fifteen defendants for their individual shares of $2,043,953.00 that HJ Capital paid out to them in July, August, and October of 2007. Defendants' individual shares of the $2,043,953 payment constituted a full repayment

of each defendant's initial investment in Hyatt Johnson A3 2003, LLC ("HJ A3"), an investment LLC managed by HJ Capital. According to the complaint, Jason Hyatt ("Hyatt") and Jay Johnson ("Johnson") created HJ Capital in 2002 to manage various investment LLCs, including HJ A3. Hyatt and Johnson, through HJ Capital and the related investment LLCs, solicited funds from individuals to invest in commercial aircraft. However, according to the complaint, investor funds were never directly or indirectly invested in commercial aircraft.

In exchange for the investment funds, investors, including these defendants, received membership interests in various investment LLCs managed by HJ Capital. The defendants in this case each received a membership in HJ A3. While these fifteen defendants recovered 100% of their initial investment in HJ A3, to date, other HJ Capital investors have only recovered approximately 6% of their initial investments in other investment LLCs. If the Receiver is successful in recovering these funds, he plans to redistribute them on a *pro rata* basis to all eligible HJ Capital investors. The Receiver's state law claims are based on the theory that it was unjust/fraudulent for the fifteen named defendants to recover 100% of their initial investments, while other HJ Capital investors only recovered 6% of their initial investments.

## II. Legal Analysis

Defendants Eliscu and the Eliscu Trust move to dismiss the complaint as to them based on a lack of personal jurisdiction, improper venue and failure to state a claim upon which relief can be granted.[1] Chase moves to dismiss the complaint against the Meyer Trust solely under the

---

[1] In her motion to dismiss, Eliscu also asserted that service of process on the Eliscu Trust was insufficient under Federal Rules of Civil Procedure ("Rule") 4(c)(1) and 12(5)(5). However, that argument appears to have been withdrawn because the Eliscu Trust filed an appearance in this case and did not raise any service issues in its motion to dismiss.

theory that the complaint fails to state a claim upon which relief can be granted.

### A. Personal Jurisdiction

First, the Court turns to Eliscu and the Eliscu Trust's arguments related to personal jurisdiction. The Receiver bears the burden of demonstrating that this court has personal jurisdiction over Eliscu and the Eliscu Trust. *RAR, Inc. v. Turner Diesel, Ltd.*, 107 F.3d 1272, 1276 (7th Cir. 1997). "When [a] district court rules on a defendant's motion to dismiss based on the submission of written materials, without the benefit of an evidentiary hearing, . . . the plaintiff need only make out a prima facie case of personal jurisdiction." *Purdue Research Foundation v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003). The court resolves any factual disputes in the pleadings and affidavits in the Receiver's favor. *Riddell, Inc. v. Monica*, 03 C 2003, 2003 WL 21799935, *1 (N.D. Ill. July 25, 2003).

The issue before the Court is whether Eliscu and the Eliscu Trust have sufficient minimum contacts with Illinois to require them to defend a lawsuit in the Northern District of Illinois ("this district"). To determine whether this Court has personal jurisdiction over Eliscu and the Eliscu Trust, the Court examines three sources: "(1) state statutory law; (2) state constitutional law; and (3) federal constitutional law." *RAR, Inc. v. Turner Diesel, Ltd.*, 107 F.3d 1272, 1276 (7th Cir. 1997). The Illinois long-arm statute provides that an Illinois court "may . . . exercise jurisdiction on any basis . . . now or hereafter permitted by the Illinois Constitution and the Constitution of the United States." 735 ILCS 5/2-209(c). Because the relevant Illinois statute authorizes personal jurisdiction to the constitutional limits, this Court is only required to examine constitutional law. *RAR, Inc.*, 107 F.3d at 1276.

The Due Process Clause of the Fourteenth Amendment limits when a state can assert in personam jurisdiction over a nonresident individual. *See Pennoyer v. Neff*, 95 U.S. 714, 733 (1878). A defendant must have "certain minimum contacts with [the state] such that the maintenance of this suit does not offend 'traditional notions of fair play and substantial justice.'" *RAR, Inc.*, 107 F.3d at 1277 (quoting *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). The meaning of "minimum contacts" for "a particular case depends on whether the state asserts 'general' or 'specific' jurisdiction." *RAR, Inc.*, 107 F.3d at 1277. The Receiver does not argue that this Court has general jurisdiction over Eliscu and the Eliscu Trust. Therefore, the Court will only examine whether the Receiver has made a prima facie showing of specific jurisdiction.

"Specific jurisdiction refers to jurisdiction over a defendant in a suit "arising out of or related to the defendant's contacts with the forum." *Id.* (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n. 8 (1984)). The Court must decided whether Eliscu and the Eliscu Trust have "purposely established minimum contact within [Illinois]" sufficient that they "should reasonably anticipate being haled into court [in Illinois]." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985). In order to establish such minimum contacts, the Receiver must show that "the conduct underlying the claims was purposely directed at the forum state," thus invoking the benefits and protections of Illinois law. *Tamburo v. Dworkin*, 601 F.3d 693, 702 (7th Cir. 2010). "In all cases the point of the purposeful-direction requirement is to 'ensure that an out-of-state defendant is not bound to appear to account for merely 'random, fortuitous, or attenuated contacts' with the forum state." *Tamburo*, 601 F.3d at 702 (quoting *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1071 (10th Cir. 2008)).

4

Telephone, wire, and mail contacts into the forum can be sufficient to establish personal jurisdiction. *FMC Corp. v. Varonos*, 892 F.2d 1308, 1313-14 (7th Cir. 1990).

In connection with their investments in HJ A3, Eliscu and the Eliscu Trust had multiple wire and/or mail contacts in this district, sufficient to confer specific jurisdiction over them for purposes of this case. Hyatt, Johnson, HJ Capital's employees, and the buildings used to conduct HJ Capital business, including the management of HJ A3, were all located in this district. Further, all HJ Capital administrative functions were performed in Illinois. Specifically, Eliscu and the Eliscu Trust made contact with this district via mail and/or overnight courier when they sent their investment funds and completed investor questionnaires for HJ A3 to this district. Eliscu and the Eliscu Trust also received checks from HJ A3 and/or HJ Capital that were mailed to them from this district and any inquiries they had about their investments were directed to this district. Accordingly, the Court finds that it has specific personal jurisdiction over Eliscu and the Eliscu Trust for purposes of this case.

### B. Improper Venue

Next, the Court turns to Eliscu and the Eliscu Trust's argument that venue is not proper in the Northern District of Illinois. Venue is proper in this district under 28 U.S.C. § 1391(b)(2) if "a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated" in this district. The Receiver bears the burden of establishing that venue is proper in this district. *Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 18 (1972).

As set forth above, Hyatt, Johnson, HJ Capital's employees, and the buildings used to conduct HJ Capital business, including the management of HJ A3, were all located in this

5

district. Further, all HJ Capital administrative functions were performed in Illinois and all decisions concerning distributions to HJ A3 and HJ Capital investors were made in this district. Accordingly, venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2).

Additionally, Eliscu and the Eliscu Trust failed to establish that transfer of venue to the Middle District of Florida pursuant to 28 U.S.C. § 1404(a) is appropriate in this case. Eliscu and the Eliscu Trust have not presented any facts to demonstrate that venue is proper in the Middle District of Florida, or that transferring this case to that district would be more convenient for the parties and witnesses, or that it would be in the interest of justice. *See Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 219 (7th Cir. 1986). Therefore, the request to transfer venue to the Middle District of Florida is denied.

### *C. Failure to State a Claim*

Finally, the Court turns to all three defendants' arguments that the complaint should be dismissed pursuant to Rule 12(b)(6) because the Receiver has failed to state a claim upon which relief can be granted. In ruling on a Rule 12(b)(6) motion to dismiss, the court treats all well-pleaded allegations as true, and draws all reasonable factual inferences in the Receiver's favor. *Justice v. Town of Cicero*, 577 F.3d 768, 771 (7th Cir. 2009). Under Rule 8(a), the complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Rule 9(b) requires that "the circumstances constituting fraud or mistake shall be stated with particularity." The factual allegations must be sufficient "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.E.2d 929 (2007). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim of relief that is plausible on its face." *Ashcroft v. Iqbal*, ___

U.S. ___, ___, 129 S. Ct. 1937, 1949, 173 L.Ed.2d 929 (2009).

### *1. Unjust Enrichment*

Under Illinois law, "[t]o state a cause of action based on a theory of unjust enrichment, a plaintiff must allege that the defendant has unjustly retained a benefit to the plaintiff's detriment, and that defendant's retention of the benefit violates the fundamental principles of justice, equity, and good conscience." *Cleary v. Philip Morris Inc.*, 656 F.3d 511, 516 (7th Cir. 2011) (quoting *HPI Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc.*, 131 Ill.2d 145 (1989)).

As an initial matter, the Meyer Trust argues that a claim for unjust enrichment is not an independent cause of action under Illinois law. The Seventh Circuit addressed this issue in *Cleary,* 656 F.3d at 518. Although the Seventh Circuit did not find it "necessary to resolve definitively," the Seventh Circuit suggested, and this Court agrees, that the Illinois Supreme Court recognizes unjust enrichments as an independent cause of action. *Cleary,* 656 F.3d at 518 (citing *Raintree Homes, Inc. v. Vill. of Long Grove*, 209 Ill.2d 248 (2004)). Accordingly, the Court will not dismiss the unjust enrichment claim on the basis that it is not an independent cause of action.

Defendants also argue that the Receiver has failed to allege a valid unjust enrichment claim because a contract existed between defendants and HJ A3, and the instant claim is related to issues governed by that contract. "When two parties' relationship is governed by contract, they may not bring a claim of unjust enrichment unless the claim falls outside the contract." *Prudential Ins. Co. of America v. Clark Consulting, Inc.*, 548 F.Supp.2d 619, 622 (N.D.Ill. 2008). The Receiver argues that the instant claim falls outside of any contract between defendants and HJ A3. The Receiver claims that he is attempting to recover money paid out by

7

HJ Capital, not HJ A3, and that those payments made to defendants were to the detriment HJ Capital and its other investors and that defendants' retention of those benefits violates fundamental principles of justice, equity and good conscience. As stated above, at this stage in the proceedings, the Court must view the allegations in the complaint in the light most favorable to the Receiver. The Receiver alleges that the disputed payments to defendants were from HJ Capital and not HJ A3. If that allegation is true, it would appear that those payment fall outside of any contract between defendants and HJ A3.

Finally, the Meyer Trust argues that the unjust enrichment claim should be dismissed because the Receiver failed to allege a duty on the part of defendants, and the return of defendants' initial investment cannot be unjust. Duty does not appear to be a required element of an unjust enrichment claim. *See Raintree,* 209 Ill.2d 248 (2004). The case the Meyer Trust cites to support this argument actually relies on a case involving restitution, not unjust enrichment. *See Board of Educ. Of City of Chicago v. A, C and S, Inc.*, 131 Ill.2d 428, 464-466 (1989). Additionally, in an equitable receivership, a determination as to whether the return of an investor's initial investment is unjust is an issue more appropriately addressed on a motion for summary judgment, not at the motion to dismiss stage of the case. *See S.E.C. v. Wealth Management LLC*, 628 F.3d 323, 333-34 (7th Cir. 2010). Accordingly, defendants' motion to dismiss the unjust enrichment claim is denied.

### 2. Constructive Fraudulent Transfer

Pursuant to Rule 9(b), in order to state a valid claim for constructive fraudulent transfer, a plaintiff must allege "what (or how much) was transferred, when the transfer was made, how it was made, who made it, who received it, and under what circumstances." *In re Life Fund 5.1*

*LLC*, 2010 WL 2650024, fn3 (Bankr. N.D.Ill. 2010). Defendants argue that the Receiver has not pled its constructive fraudulent transfer claim with enough particularity to satisfy Rule 9(b). This Court disagrees. In the complaint, the Receiver alleged that HJ Capital deposited funds into an HJ A3 account sufficient to repay defendants' initial investments ("Redeemed Funds"). Thereafter, HJ A3 issued a check to Eliscu in the amount of $20,000 on July 19, 2007; issued a check to the Eliscu Trust in the amount of $75,000 on July 9, 2007; and wired funds to the Meyer Trust in the amount of $300,000 on July 11, 2007. These payments were equal to each defendant's initial investment. In the complaint, the Receiver also included facts regarding the circumstances surrounding those payments. The Receiver alleged that the funds to cover those payments were not generated through investments, and that HJ Capital did not receive reasonably equivalent value in exchange for those payments. Those allegations in the complaint are sufficient to satisfy the Rule 9 pleading requirements.

The Meyer Trust also argues that this claim should be dismissed because HJ A3 is alleged to have made the fraudulent transfer, but HJ Capital, a separate legal entity, is alleged to have not received reasonably equivalent value in exchange for the transfer. A deferential reading of the complaint does not support this interpretation. Instead, the Receiver has alleged that HJ Capital, through HJ A3 as its conduit, made the fraudulent transfer. The facts in the case may not ultimately support this allegation, however, in ruling on the motion to dismiss, the Court must treat this allegation as true.

### 3. Fraudulent Conveyance

"To state a legally sufficient cause of action for fraudulent transfer in law, under section 6 of the Fraudulent Transfer Act, the plaintiff must allege: (1) a transfer made for inadequate

9

consideration; (2) an existing or contemplated indebtedness owed by the transferor; and (3) the transferor's failure to retain sufficient property to repay his indebtedness." *Medcare HMO, Inc. v. Muchin*, 689 N.E. 2d 374, 380 (1997). Defendants move to dismiss the Receiver's fraudulent conveyance claim because he has not sufficiently alleged inadequate consideration or insolvency. The Court disagrees. In paragraph 37 of the complaint, the Receiver alleged that HJ Capital received nothing from defendants in exchange for the Redeemed Funds. An allegation that HJ Capital received "nothing" in exchange for the Redeemed Funds is sufficient to plead the inadequate consideration element of a fraudulent transfer claim.

The Receiver also adequately alleged that HJ Capital did not retain sufficient property to repay its indebtedness at the time it repaid the defendants their initial investments. The Complaint alleges that HJ Capital collected approximately $20 million from investors and never invested any of those funds. The complaint further alleges that Hyatt misappropriated approximately $1.6 million of those funds for his personal use. Based on these facts, HJ Capital had no more than $18.4 million in assets, and likely far less, and at least $20 million in debts at the time it made the disputed payments to defendants. These facts are sufficient to plead the third element of a fraudulent conveyance claim.

### III. Conclusion

Ultimately, this Court must decide the equities at issue in this case and whether it is unjust or potentially fraudulent for some investors to recover 100% of their initial investment while other investors, through no fault of their own, will only recover approximately 6% of their initial investment. The Court must also consider the equities and ramifications of potentially ordering innocent parties to return funds they received in 2007 and that may not still be in their

possession. However, resolution of these issues is premature at this early stage in the litigation. Accordingly, the motions to dismiss are denied.

**Ordered**: Defendant Alicia Eliscu's motion to dismiss [35] is denied. Defendant Edward H. Eliscu Marital Trust's motion to dismiss [57] is denied. Defendant Antonina B. Meyer Trust's motion to dismiss [97] is denied. Defendants' answers to the complaint are due 7/9/12.

**Entered**: _____
George W. Lindberg
Senior U.S. District Court Judge

Dated: June 25, 2012